Afternoon. Isogawa v. Kang, you may have to help me with those pronunciations, number 18-4082. Mr. Robinson, if you're ready. Good morning or good afternoon, your honors and counsel. May it please the court, John Robinson for the appellant Takeshi Ogawa. This case is about whether two twin girls should be returned to Japan while the legal system in that country sorts out the underlying custody dispute. The district court in this case said no, but its analysis to reach that decision had two flaws. First, it misapplied the plain language of the Hague Convention. And second, its in-camera interview that it used to invoke one of the narrow exemptions to the convention, that interview was not robust enough to support any of the exceptions that are available under the Hague Convention. I'll take the issues in that order. So first I'd like to start with a little bit about the language of the convention. The Hague Convention Article 3 sets forth the standard for the right of return that a left-behind parent can invoke. And there are three elements that the parent has to show to approve the prima facie case. First, I'll use Ogawa's situation. He had to show that the twins were habitual residents of Japan. He had to show that he had custody rights under the law of Japan. And he had to show that he was exercising those rights. Now starting with that first element, there's no contest in this case about that because the answer filed by Ms. Kang admitted and conceded that the twins habitually resided in Japan. So that brings us straight to the real grit of this case, which is whether or not Mr. Ogawa had custody rights under the law of Japan. I think the best way to answer that question is to look at the divorce agreement. And this is at page 45 of the Appellant's Appendix. A little bit of background might be useful. So in Japan, there is no requirement to proceed with a divorce in court. And the record supports that about 80% of divorces in Japan are conducted through this sort of contractual mutual agreement. So this isn't a strange ‑‑ I can't say whether this particular document falls on one side of the spectrum of complexity or not, but this isn't a strange thing to see in the Japanese legal system. Now, at the bottom of page 45, we have Article III of the divorce agreement. And it does a couple things, and I'll start at the beginning. Can I interrupt you just to ask you who prepared it? The agreement itself? Yes. So it was a mutual agreement between the two parties, Ogawa and Kang. The translation was done by someone under Mr. Ogawa's employ, but it was ratified by the central authority in Japan, and there was no contest about the way the translation worked. I understand you don't have to go to court, but do you have lawyers? Did someone ‑‑ who wrote this up is what I'm asking. So, oh, I do not know. It's certainly not in the record to my knowledge, Your Honor. I believe that they may have retained what we might consider a paralegal here. It's sort of a form‑based thing was my understanding. I didn't speak with my client a lot about that issue. But it is, you can see on the last page of the document, it is, or maybe the second to last page, somewhere around page 50 of the appendix is the notarization that gives it binding legal force, signatures and so on and so forth. So the first thing that Article III does is it says that Ms. Kang has the parental authority. A little bit more background is probably useful. In Japan, there isn't really a joint custody as we would understand it in American law, in American family law. But what they do have under case precedent is an idea that parental authority and custody can be severed. And the record shows that the parental authority is typically the high atmospheric 30,000 foot overview of big picture legal decisions. For instance, if one of the parents has to sign to get a passport, it's the parent with the parental authority that has the authority to sign for their equivalent of the Department of State, something like that. Custody, on the other hand, which is not exercised jointly, is the day-to-day stuff, right? Schooling, hygiene, food, things of that nature. Doesn't parental authority include the right to determine the child's residence? I'm not sure that the record doesn't answer that question, and I don't know, not being a Japanese legal scholar. I thought there was some testimony or statement to that effect from the individuals that were brought in to something in the record. There is something. So there were two hearings, Your Honor, and I think you're speaking of the second evidentiary hearing that had competing experts. And there was some discussion during that hearing about what the scope of the parental authority was. But two things. I think you were speaking to testimony from Ms. Kang's expert, who speaks Japanese and studied abroad there but isn't a Japanese lawyer. At the time, I objected on 702 grounds, actually. But it wasn't conclusive, even if we set aside the evidentiary problems with having someone opine about the law of Japan that's not a lawyer. Let me turn it around a little bit different. Because I guess what I'm trying to get at here is what I'm not seeing in your briefing is anything really telling us what you think the content under Japanese law was of your client's rights. And without that content, how do we determine whether that content falls within the Hague Convention definition of right to custody, which is ultimately what we need to do here? Right. So let me try to unpack that for you, Your Honor. You're right that the briefing doesn't address what we think. There are two reasons for that. The other thing that we don't address is what handover means. And these things are kind of tied together in Article III of the divorce document. The reason I don't opine about that is because I don't need to. The only question under the Hague Convention is whether Mr. Ogawa had any custody right whatsoever. And if he did— Well, it has to be within their definition of right to custody. Oh, that's correct. Right? That's correct, yes. Okay. So just not any custody doesn't do it. And that's about all we know here is that he had something, apparently. That's right. That's fair, Your Honor. It has to be a custody right under the law of the forum state, Form 1 in this case, Japan. But the rest of Article III answers that question. Well, my understanding is under the Hague Convention the rights of custody relate to the care of the person of the child and in particular the right to determine the child's place of residence. And don't we know here that at least that certainly was within the mother's authority? So two answers. Parental authority? Right. So I think the first answer is no, we don't know that because the record doesn't establish what the scope of parental authority is. Well, I know there's this Japanese country profile here which says what parental authority generally is, doesn't it? Right. The literature speaks to this. I'm not saying it's unknowable. I'm just suggesting that a document, I'm not sure exactly what you're referring to, Judge, precisely, but there's a lot of stuff from the foreign ministry in Japan that speaks about kind of these big-picture ideas. But the second reason is that we know from the Abbott case, 2010 U.S. Supreme Court, that what we define as custody in the American family law context is not what the Hague Convention uses that term custody to mean. In Abbott, the court decided that a niexiate right, which is nothing that we would consider a custody right in the family law context, is nonetheless a custody right under the Hague Convention. And so what Abbott stands for is the- The right to object. You're talking about the right to object if a parent takes a child out of the country. Correct. Which we don't have here. There's nothing in this agreement about that. That's true. So I'm using Abbott just to support the proposition that things that don't fit in our general conception of custody nonetheless trigger the right of return under the Hague Convention. And I'll tie that back into the remainder of Article III, which under the divorce agreement, yes, parental authority, no question, vested in mother. What it says after that is custody vested in father. Then, third, we get to the handover provision, which is the part of- Well, it's the core of this dispute. And in the same sentence that father is supposed to hand over the twins to mother, it says, however, and this is on page 46, however, husband shall continue to maintain the right of custody in children. And there was no dispute that custody didn't mean custody. So we don't have to decide what custody means. No one disputed it below. The Japanese central authority, their foreign ministry, passed this, did an initial review, said it met their initial review of whether this sort of made a prima facie case. Otherwise, the central authority in Japan wouldn't have forwarded it to our Department of State. And for those reasons, I think that settles. We don't need to know what custody means. It says custody. No one disputed that. And it's enough. Don't we need to know the content of his rights in order to proceed with our analysis under the Hague Convention? Don't we need to know what the content of his right is? No, Your Honor. It just doesn't matter. Should we assume that he had some right to determine the child's residence? Should we assume that? I don't think we need to assume it. And on what basis? So, Your Honor, I think I need to do a better job of drawing distinction between getting to pick where the kids live and having custody rights in those kids. So what the Hague Convention does is it's a pointing rule. You know, it's a conflict of laws rule. And it says restore the status quo ante while the jurisdiction of habitual residents, in this case Japan, sorts out exactly this sort of dispute. There's clearly a dispute between the two parents about what the handover provision meant and what custody rights were retained by Mr. Ogawa. But that's not for either this court or for the district court in Utah. Well, the Hague Convention Article 5, a right of custody, which is the right there protected under the Hague Convention, shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence. And we know that, generally, parental authority in Japan means the right to determine the place of a child's residence. So what gives us any reason to believe that your client had a right of custody within the Hague Convention's definition of a right of custody? My best answer, Your Honor, is that the divorce agreement, the operative legal document here, says that he retained, even though he was going to hand them over, he retained a right of custody. But we looked to Japan's law to determine what that meant, and you're not really telling me what you think that meant here. We know it's not parental authority. We know you must be arguing it's something more than visitation because visitation is also included in the agreement. Right. So what was it? So, Your Honor, the argument is that custody means custody, and both the district court and Ms. Kang agreed that there is some custody right that Mr. Ogawa retained, and it's for the Japanese legal system to determine the scope of that right. And I think that's, you know, I understand. When it comes to applying the Hague Convention, it's right now up to us to determine the scope of that. No, Your Honor, I respectfully disagree. What should we do? We should just assume that his custody right, the content of it, somehow fell within the convention? What was the point of having the expert testify then? Well, I objected to the court's need for expert testimony, so I'm not quite sure why the court wanted that, and the court didn't rely on the experts in its decision, so I can't answer that second question. But I submit that this court's only task is to decide if Ogawa had any custody right whatsoever. And if custody is the care of the children, which it certainly was for the first four years, right, they were living with him, he was taking them to school, so on and so forth. As long as he retained some right of custody, one piece of the bundle of sticks, then the proper form to adjudicate the scope of his custody rights is Japan. But why isn't the bundle of sticks, the bundle of sticks under the Hague Convention, which is right to care for the child and to determine the place of residence? Your argument seems to be, well, as long as the word custody is there, there's something, that must mean something, even if it's the most minimal thing that it can mean, and that just settles the question. But your petition has been brought under the Hague Convention, and you have a burden to meet, and it has its own definition of rights to custody. And so how have you met your burden? Well, I mean, if the court said that I didn't, so, you know, obviously if this court affirms that I didn't meet the burden. Well, but you're here to convince us that you did. No, no, I understand. So I'm just saying, you know, speaking of the status quo, the answer is now I didn't meet the burden. I think that particularly given Abbott's more or less, Abbott is more or less clear that the term custody under the Hague Convention extends to the furthest possible reaches. Even a non-custodial right is still a custody right under the Hague Convention, and this is a document that was drawn up by both parties that says he retains custody of the children. So the court's analysis that if it's true that the parental authority was always the right to decide where they live, then she could have come and taken them at any time. This handover provision wasn't at issue. Now, my opponents have made the handover issue the core, and so we have an inconsistency between the court's position and the litigation position and my argument, and I see that I'm out of time, so. I'd like to finish your thought. I mean, I think that's essentially it. I think Abbott doesn't control on all fours of this case, but the definition of custody that Abbott provides to this court means that any custody right whatsoever, any stick in that bundle of sticks means the right of return and the twins should be sent back to Japan while Japan sorts out this ordeal. And I appreciate the court's time and encourage it to reverse. Thank you. Thank you. Mr. Wall. Thank you, Your Honor. May it please the court, counsel. Good afternoon, Your Honors. Cory Wall appearing on behalf of the respondent and appellee, Kyung Kang. I think in looking at this case, the court, I think, has a pretty good grasp as far as what the factual background is in this matter. One of the unique things about the Japanese law is it allows parties to enter into a divorce agreement. They enter into a contract, and in answer to an earlier question, these parties negotiated that contract long distance. During the entire time in question, my client lived in Salt Lake City, Utah. Mr. Ogawa resided in Japan. And so that process went on back and forth. But a unique thing about this is that these parties had agreed in advance back in 2013, when this agreement was entered into, that four years later, almost four years to the day, at the end of March 2017, that there would be the handover of the children. And our position on this, Your Honors, is that that handover constituted a premeditated or prearranged agreement where there would be a change in custody. It was initially agreed that Mr. Ogawa would have the physical custody of the children for the first four years, and then on March 31, 2017, there would be the handover of the children to my client. The problem you have is the next sentence that says he retained his custody, right? I mean, you can't ignore it. It's there. What does it mean? And what does it mean within the definition of the Hague Convention? Thank you, Your Honor. That's a good question. The district judge, we believe, made the right call on that, because in looking through this, and when we had this case, when we heard this case, we had the expert witnesses, and there was a question raised about why we had the expert witnesses. That was to deal with the interpretation of various provisions, and one of them is a Japanese word, and I'm probably going to butcher it, but the word is shinkin. That term is the parental authority, and under Japanese law, one of the parents has to be designated as the one that has parental authority. And the parties mutually agreed that Ms. Kang would have that parental authority. But there was this provision that Mr. Ogawa would retain a right to custody, and we believe the district court correctly determined that that right to custody simply means that even a non-custodial parent has the right to have the child. He does have the right to have parent time and visitation. Well, what about this? This isn't really making sense here, because she's given, at least by this translation, wife shall obtain parental authority over the following minor children. Okay. List the two children. Husband shall give due consideration, blah, blah, blah. It seems that she's given parental authority immediately upon the, at the very commencement of this agreement. Now, why couldn't she then, if parental authority means what we're told it means, why couldn't she say, yeah, I'd like to have the girls right now because I get to determine what their residence is going to be? That's a good question, Judge Moritz. And I think what had happened was because the parties had agreed to that at the upfront part of the case, she did have that parental authority. And what they had agreed to is as part of that parental authority, it was agreed that the children would reside with Mr. Ogawa for four years. But at the four-year mark, there would be the handover. And I think you need to look at the totality of that agreement because it deals not only with this handover, but it also then addresses that there would be child support paid. And Judge Kimball made the right call on that as well because by factoring that in, that's a clear indicator that there was going to be a right to have physical custody in our client as of March 31st of 2017 because beginning the next day, April 1, 2017, Mr. Ogawa was to begin paying child support of 60,000 yen per month. I didn't understand. Anybody was questioning that at least at the point of the handover, she was supposed to have physical custody. The question is what were his rights? What did that custody, what did that word mean for him and how does that impact? Thank you. Well, Your Honor, the parties had agreed because, again, you have to look at the totality of the agreement because Article 8 of that agreement talks about right of visitation. And I'll read it. It says either party can visit the children once per year. So that contemplated that there would be periods of time when my client would have custody and Mr. Ogawa would have custody. It doesn't say that just simply my client would have custody and not Mr. Ogawa, that he would always retain physical custody of the children. So that clearly contemplates that that would be the situation. Also, it was interesting that Mr. Ogawa, there was a requirement that he purchase, I believe it was economical and reasonable plane tickets to pay for the visitation. The visitation provisions also provide that the visits will only be once per year. Now, that contemplates clearly that the parties are going to be living a great distance apart, which I think is a factor in this case, that there be just a one visit per year. But it doesn't say that just my client would have the right to visitation or that Mr. Ogawa would have the visitation. Where we believe the appellant's case fails with respect to the three elements under the Hague Convention. He argues that, well, they've met two of the requirements at least. We disagree. There's no dispute that these children were residing in Japan at the time. In fact, at the actual time, they were just visiting the maternal grandparents in Korea. But elements two and three fail as well because it simply says, and this is what the district court found in terms of element two, that the removal or the retention was in breach of petitioner's custody rights under the laws of that state. Our position is that Mr. Ogawa didn't have the right to have the custody of the children, didn't have the right to have the physical custody. When March 31, 2017 rolled around, his right to have those children expired. Counsel? Yes. Your explanation of the divorce agreement seems to be a fairly common way that American lawyers would try to sit down and try to piece things together and make sense of the whole document. Understood. But how confident can we be that that's what Japanese courts would do? I mean, we have a divorce agreement that's drawn up to be governed under Japanese law. We have a translation, and I understand that no one's contesting the translation. And then we have this perplexing phrase at the end about shall maintain the right of custody of the children. So even if what you're telling us is reasonable, plausible, sensible, it isn't being done in the context of Japanese lawyers, Japanese courts trying to make sense of all this. And maybe you've made sense of all this. Not entirely. Well, maybe, maybe not. But to me, that presents at least a level of discomfort. Can you make me less uncomfortable? I'll do my best. And I think whenever you're dealing with a foreign language, there is inherently a problem. And you're dealing with not only a language, but you're dealing with a different culture. And what is contemplated? Because under Japanese law, the divorces require normally they don't split this off very often. And I'm not sure of any other cases. But normally what happens is one of the parents is given this parental authority. And I believe we've cited, but there is the article of the Japanese Civil Code. There are some provisions in there. And Article 819, which I believe is cited, but it says, if parents are divorced by agreement, which is what happened in this case, they may agree upon which parent shall have parental authority in relation to the child. And Article 820 of that, this is the Japanese code, provides that a person who exercises parental authority holds the right and bears the duty to care for and educate the child for the child's interest. And then finally, and I think this is most important, Article 821 says, residents of a child shall be determined by a person who exercises parental authority. So the Japanese law clearly provides that the person who holds the parental authority has the right to determine where the children will reside. And that's what we believe is the case in this situation. Well, then could your client have taken the children from the very outset? She could have. But the parties negotiated, they entered into a contract. They negotiated this.  And then in four years that they would be returned. So there was that contract. So if she would have gone, I think, during the first four years, at any time during the initial four-year period of time, if she would have gone to Japan and just picked up the kids or demanded that the kids be returned to her, that would have been a violation of that contract. She didn't violate that. It wasn't until after March 31st of 2017 when she started to make requests that these children be returned to her, and Mr. Ogawa simply refused. And one of the things that I find interesting is that appellant argues that our client was exercising self-help by going to Korea and picking up the children and flying them back to the United States, when in fact it's our position that Mr. Ogawa was the one that was exercising self-help by wrongfully retaining the physical custody of those children. And he didn't have the right to do that. So my client went at a time when it was available to go and pick up the children. I'm sorry, Your Honor. Neither of the parties have entirely clean hands here. My understanding is the maternal grandparents were in Korea, and the father didn't understand that the mother was going to be there and take the children, and so he allowed the visitation, which I'm not saying. I'm just saying I don't think either party has clean hands, which is often the situation. It's often the situation. Which is why we need that Hank Convention to figure it out. Right, and I get that. And I practice primarily in family law, and this happens all the time. Let me ask you, just so I understand your position, on that word custody, which just sits there. Are you taking the view that it's a scrivener's error by a Japanese paralegal who's not very good at her job? Was it a point that was disputed or negotiated between the parties before this was signed? Is there any evidence of that? I'm sorry, Your Honor. Is it a mistake? I don't think there's a mistake, but I think the district judge correctly determined, and I agree with him, because when we're talking about custody of children in divorce and custody proceedings, the word custody can have any number of meanings. And it can mean legal custody, for example, that a party still has an obligation to consult and confer with the other parent. And, in fact, this agreement does have a provision like that, that says that before any important decisions about the children are made or things of that nature, that there needs to be communication between the parents. So I think it clearly contemplates that they have joint legal custody in that sense. And then Judge Kimball in the district court, I think, correctly determined that simply because after the date of the handover, Mr. Ogawa still retained the rights to exercise custody in the form of visitation, which visitation really is a form of custody, because if you think about it, custody is a form of possession. You have the children in your possession. I hate to think of children as possessions or chattel or property, but they're not. But when you're dealing with adults and parents, they do have their children with them in their custody. So I think when we're dealing with that term, and I get that that probably bothers the court, that nagging word in there that he retains the right to custody, but it doesn't say in there that he actually will retain physical custody of the children. Could I ask a related question? This has to do with Ms. Toyama's testimony. Would you agree she was the only expert on Japanese law? I know Mr. Young testified, but he knew the language, but she was the expert on Japanese law. She's a Japanese attorney. All right. Now, again, I'm going to try to describe what she said, and you can correct me if I'm off, but didn't she testify that parental authority includes the right to determine the child's residency when parental authority and custody rights are not split up? In other words, she talked about a parental custody split, and I wasn't quite sure what she was getting at, so I'm going to ask you. I don't know that I understood her testimony on that, but the other thing, too, that was not controverted that both of our experts, if we want to call them that, that they both agreed on was the term that was used for the handover, and she did not dispute that there was a period of time on March 31st that those children were to be handed over to Ms. King, and that was not in dispute, and she should have received those children at that point in time. But I really don't know, since I don't know Japanese, and it's hard for me to interpret that. I'm running out of time, but just very quickly, I just wanted to touch very briefly on the age maturity exception, if I may. And, again, we believe that the judge made the proper call on that in terms of the children expressing a preference, but also expressing an objection, and the case law that we cited in our brief, I think, shows that when a child feels uncomfortable or doesn't feel safe or is uncomfortable with the parenting style of the other parent, that that can also constitute a form of objection. What of the cases that you rely on on this issue, is there one that you think is particularly similar and strong to support your case? I'm sorry, I don't mean to cut you off because I'm running out of time, but the Custodio case, I think, is very helpful when it talks about that. Which one is that? The Custodio case. Oh, okay. If I may. When it talks, yeah, Custodio v. Semillon, it's a, it says at page 1091 in that case, is a child expressing a fear of his father's parenting style, dislike of his school, and lack of friends back in Peru, which involved that case, were enough to constitute an objection for the purposes of the convention. The other thing, too, I just wanted to bring to the Court's attention, is that in terms of the record of this case or the evidence, one of them included an affidavit from my client that included letters that the children wrote to the Court. And clearly the judge had access to that. And so when counsel or when the appellant is trying to lie on the notion that the judge relied solely on the in-camera interview of these two children, he was looking at the totality of all of the evidence that he had before him, which included the affidavits and the information that were provided to him at the first hearing, as well as what happened at the in-camera interview. And those children, in their own letters to the Court, expressed an objection to returning to Japan. I'm way over ahead of time, Your Honor, but I appreciate your time. Thank you, counsel. We appreciate your argument. All right, thank you. And Mr. Robinson, he went a little bit over. Do you want to take 20, 30 seconds? Thank you, Your Honor. I appreciate the fairness. I didn't prepare a rebuttal because I was out of time. I think I would just make the one point that even presuming that parental authority includes the right to choose where the children live, I don't concede that. But even if that's correct, and I'm wrong, as long as her removal of the children was in derogation of any remaining custody right that Ogawa had, the Hague Convention still applies, and the children return to Japan while the Japanese courts sort this out. And I guess in 10 seconds, I'm not sure that the in-camera interview was wholly insufficient to make any determination whatsoever. And with that, I'll submit it and ask the Court to reverse. Thank you. Okay. Thank you very much, Counsel. Very interesting case. Not the kind of case we see every day. Thank you for your arguments. Also, thank you for your patience. Always tough to go last in an afternoon session. And with that, Counsel are excused. Case is submitted.